**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 4:17-CR-00025-MAC-CAN |
| | § | |
| DAMEON DEON PARKER | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Dameon Deon Parker's Motion to Suppress Evidence ("Defendant's Motion to Suppress") [Dkt. 120]. On December 15, 2017, the undersigned conducted an evidentiary hearing and heard oral argument from both the Government and Defendant on the pending Motion to Suppress. After considering the Motion to Suppress, the Government's Response [Dkt. 126], all other relevant filings and evidence, as well as the oral argument presented, the Court recommends that Defendant's Motion to Suppress [Dkt. 120] be **DENIED**.

**BACKGROUND**

**I.    THE INDICTMENT**

On February 9, 2017, Defendant was indicted for a violation of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Methamphetamine, Cocaine Base, and Marijuana) and a violation of 21 U.S.C § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) [Dkt. 15]. The Indictment was superseded on August 9, 2017; the Superseding Indictment charged Defendant in three counts with a violation of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Methamphetamine, Cocaine Base, and Marijuana), a violation of 21 U.S.C § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime), and a violation of 18 U.S.C. § 841(a)(1)(Possession

with the Intent to Distribute or Dispense Cocaine and Marijuana) [Dkt. 53]. The Superseding Indictment in pertinent part alleges that "[f]rom in or about 2012 and continuously through February 9, 2017, with codefendant Michelle Brittany Parker, Defendant knowingly and intentionally combined, conspired, and agreed with other persons to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, and less than 50 kilograms of marijuana, a violation of 21 U.S.C. § 841(a)(1). In violation of 21 U.S.C § 846." [Dkt. 53]. The Superseding Indictment further charges that "[o]n or about January 30, 2017, in Grayson County, Defendant and Michelle Brittany Parker knowingly and intentionally possessed with the intent to distribute or dispense 500 grams or more of a mixture or substance containing a detectable amount of cocaine and less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1)" [Dkt. 53]. The Superseding Indictment finally charges that "[o]n or about January 30, 2017, in Grayson County, Defendant and Michelle Brittany Parker knowingly possessed a Springfield Model XD .45 caliber pistol, serial number US606194 (a firearm) in furtherance of a drug trafficking crime for which they may be prosecuted in a Court of the United States, namely: conspiracy to distribute and possess with the intent to distribute cocaine and marijuana, a violation of 21 U.S.C. § 846, all in violation of 18 U.S.C. § 924(c)" [Dkt. 53].

## II. MOTION TO SUPPRESS

Defendant filed the instant Motion to Suppress on December 4, 2017, seeking suppression of "all the evidence obtained against Defendant" [Dkt. 120 at 30]. Defendant specifically asserts that all evidence obtained from the searches of 1126 Big Cedar Lane in Denison, Texas, 1408 Knottingham Road in Little Elm, Texas, Defendant's Snapchat account and iPhone, as well

as any verbal statements by Defendant should be suppressed because "[t]he [Big Cedar Affidavit] is a barebones affidavit that contains stale information from 2012 and conclusory statements from 2016, and began a chain of bad search-warrants" [Dkt. 120 at 27].[1]  Defendant thereafter argues that "the good-faith exception does not apply" because any reasonably well-trained officer would have known the Big Cedar Warrant was deficient, and thus, could not in good faith have relied on the warrant's validity and also that "the magistrate issuing the warrant did not have substantial basis for believing there was probable cause" [Dkt. 120 at 28].   Defendant further argues "under the 'fruit-of-the-poisonous-tree' doctrine," that all evidence derived from and/or as a result of the Big Cedar Search Warrant must also be suppressed [Dkt. 120 at 28].[2]  The Government filed its Response to Defendant's Motion to Suppress on December 14, 2017 [Dkt. 126].   The Court conducted an evidentiary hearing on December 15, 2017 [Dkt. 121], wherein Sergeant Shane Kumler of the Denison Police Department and ATF Special Agent Dustin Holbert testified and the Government admitted four exhibits;[3] the Hearing transcript was filed December 18, 2017 [Dkt. 130].  The underlying facts relevant to Defendant's Motion to Suppress are summarized as set forth below.

## III.  THE INVESTIGATION

Dating back as early as 2012, various law enforcement agencies, namely Denison Police Department and the Bureau of Alcohol, Tobacco, and Firearms, were investigating Defendant for his alleged drug trafficking activities in Grayson County [Dkt. 129, Ex. 1].  Throughout the course

---

[1] Defendant further points out that Sergeant Shane Kumler omitted from the Big Cedar Affidavit that he and other officers had conducted a protective sweep of the Big Cedar residence shortly prior to applying for the search warrant, which bears on the probable cause analysis [Dkt. 120 at 19].
[2] Defendant also summarily asserts that the attenuation doctrine, "independent source" exception, "inevitable discovery" exception, and "exigent-circumstances" do not apply in the instant case [Dkt. 120 at 27-29].
[3] The Government's exhibits consisted of: (1) the Big Cedar Affidavit, Search Warrant, and Return; (2) the Knottingham Affidavit, Search Warrant, and Return; (3) the Snapchat Affidavit, Search Warrant, and Return; and (4) the iPhone Affidavit, Search Warrant, and Return [Dkt. 129].

of such investigation, Sergeant Kumler attested to speaking with several confidential informants regarding Defendant's involvement in the distribution of cocaine, methamphetamine, and marijuana in the Grayson County area [Dkt. 129, Ex. 1]. Sergeant Kumler testified that he and other law enforcement learned from various confidential sources that Defendant kept quantities of cocaine, methamphetamine, and marijuana at locations in the Grayson County area, one of those locations identified is co-defendant, Michelle Parker's residence at 1126 Big Cedar Lane in Denison, Texas.

## IV. DEFENDANT'S ARREST

On January 30, 2017, Sergeant Shane Kumler conducted surveillance on 1126 Big Cedar Lane in Denison, Texas (the "Big Cedar residence") [Dkt. 129, Ex. 1]. Sergeant Kumler testified that while watching the Big Cedar residence, he observed Defendant leave the residence and enter a silver Ford passenger vehicle [Dkt. 130 at 11–12]. Sergeant Kumler testified that on January 30, 2017, he was aware of Defendant's alleged drug trafficking activities and Defendant's prior arrests, and followed Defendant to a gas station where he observed Defendant pump gas into the vehicle and drive back towards the Big Cedar residence. Sergeant Kumler further testified that Officer Deering of the Denison Police Department attempted to stop Defendant for an observed traffic violation, but Defendant failed to stop the vehicle until parked in the driveway of the Big Cedar residence [Dkt. 130 at 12]. Defendant was subsequently arrested for failure to display his driver's license [Dkt. 130 at 13]. $7,083 in cash was found on Defendant's person and inside his vehicle [Dkt 130 at 13].

Sergeant Kumler testified that during Defendant's arrest, Defendant's wife and co-defendant, Michelle Parker, was standing on the front porch of the Big Cedar residence; Sergeant Kumler stated that he approached Michelle Parker and spoke with her [Dkt. 130 at 13–

14].  Sergeant Kumler testified that while on the front porch of the Big Cedar residence, he detected a strong odor of marijuana from inside the residence and also heard people inside [Dkt. 130 at 14]. Sergeant Kumler testified that he asked Michelle Parker if she consented to a search of the residence; she refused to give her consent [Dkt. 130 at 14].  Sergeant Kumler stated he was aware from his investigative efforts that Defendant was typically accompanied by another person on his visits to Grayson County.  Specifically, Sergeant Kumler testified that he "had information that [Defendant] when he came to Grayson County, never came alone …. [and] had someone else with him to … protect his money.  So at that time, [Sergeant Kumler] thought [Defendant] probably had a partner inside the house" [Dkt. 130 at 14-15].  Sergeant Kumler and several other Denison Police Officers entered the Big Cedar residence and conducted a protective sweep to ensure the safety of the officers present and to secure the residence [Dkt. 130 at 14–15].  Sergeant Kumler testified that he conducted the protective sweep because of this information and also the strong smell of marijuana emanating from inside the residence [Dkt. 130 at 20].  Sergeant Kumler found Michelle Parker's children inside the residence, but did not find any contraband in plain view. Officers detained Michelle Parker and her children while Sergeant Kumler left to apply for a search warrant for the Big Cedar residence [Dkt. 130 at 15].

## V.      THE BIG CEDAR RESIDENTIAL SEARCH WARRANT

The Big Cedar Affidavit, prepared by Sergeant Kumler, generally describes Sergeant Kumler's credentials and outlines the background investigation of Defendant's drug trafficking activity in Grayson County [Dkt. 129, Ex. 1].  Sergeant Kumler specifically attests that "[o]ver the past several years [he] has received information from Confidential Sources and Confidential Informants that [Defendant and Michelle Parker] are involved in the distribution of Cocaine, Methamphetamine and Marijuana in the Denison, Grayson County, Texas area.

[Sergeant Kumler] has received information from Confidential Sources that [Defendant] keeps a quantity of Cocaine, Methamphetamine and Marijuana at [Michelle Parker's] residence located at 1126 Big Cedar Lane, Denison, Texas" [Dkt. 129, Ex. 1 at 3]. Sergeant Kumler then outlined certain instances from the investigation of Defendant, including several where Defendant was found in possession of large sums of cash, similar to the amount he was arrested with on January 30, 2017. Sergeant Kumler noted that on September 12, 2012, a Grayson County Deputy stopped a vehicle for a traffic violation: the driver was in possession of marijuana and a large sum of cash, marijuana and a large sum of cash were found in the center console. Defendant was a passenger in the vehicle [Dkt. 129, Ex. 1 at 3–4]. The driver later told law enforcement that Defendant hired him to drive them to Dallas for the purpose of purchasing narcotics. On November 1, 2012, Sergeant Kumler conducted surveillance at an apartment building reputedly known for drug activity; he observed multiple vehicles pull up to an apartment, the vehicles' occupants enter the apartment for short time, and then leave [Dkt. 129, Ex. 1 at 4]. Defendant was observed leaving the apartment with another individual associated with Defendant's drug trafficking; Defendant was shortly thereafter pulled over by law enforcement, and officers found $7,063 in cash on Defendant's girlfriend. On November 15, 2012, after receiving word that Defendant was in Denison, Sergeant Kumler followed Defendant to a Denison residence where he observed Defendant make a short visit inside the residence [Dkt. 129, Ex. 1 at 4]. Defendant's vehicle was pulled over for a traffic violation shortly thereafter, and Defendant was found with $2,246 in cash and marijuana and $6,000 in cash in the center console (the majority of which consisted of $20 and $100 bills, which Sergeant Kumler attested are commonly used by narcotics dealers in conducting drug transactions). On November 18, 2016, an officer attempted to conduct a traffic stop of a vehicle registered to Michelle Parker, wherein Defendant was a passenger and

alleged to have large amounts of U.S. currency on his person; the vehicle fled at a high speed and the officer terminated the pursuit [Dkt. 129, Ex. 1 at 5]. Shortly thereafter, the officer located the wrecked vehicle and the driver thrown from the vehicle. Three bags of cocaine and mail addressed to Michelle Parker were found at the scene. Defendant fled the scene. Sergeant Kumler also detailed his surveillance of the Big Cedar residence on January 30, 2017, from his observation of Defendant's drive to the gas station and subsequent arrest, to officers' finding over $7,000 in cash on Defendant's person, to his conversation with Michelle Parker and detection of a strong smell of marijuana from inside the Big Cedar residence.

Sergeant Kumler further added that he has had multiple conversations with confidential informants that detail specific instances and observations of Defendant with large amounts of narcotics, and Defendant's use of the Big Cedar residence in his drug trafficking. Sergeant Kumler detailed Defendant's past arrests in 2012, 2007, 1997, and 1996 for Money Laundering >$1,500, Manufacture/Delivery of a Controlled Substance <1 gram, Manufacture/Delivery of a Controlled Substance >1 gram, Possession of a Controlled Substance >4 grams, three counts of evading arrest/detention, and unlawful carry of a weapon [Dkt. 129, Ex. 1 at 3]. Sergeant Kumler did not include in the Big Cedar Affidavit that he and other officers conducted a protective sweep of the Big Cedar residence prior to applying for the search warrant, and that during the sweep no contraband was found in plain view.

Judge Jim Fallon of the 15th District Court in Grayson County issued the Big Cedar Search Warrant on January 30, 2017 [Dkt. 129, Ex. 1 at 1]. Sergeant Kumler and other officers executed the warrant on the same date. Sergeant Kumler provided a return as follows: a Planet Audio box inside an opening in the master bedroom closet's wall held three (3) plastic bags of cocaine and two (2) sets of digital scales; one (1) plastic bag of marijuana on the master bedroom closet's floor;

and a Springfield XD .45 caliber handgun, serial number US606194 on top of a nightstand in the master bedroom [Dkt. 129, Ex. 1 at 8]. Defendant seeks suppression of each of these items.

## VI. THE KNOTTINGHAM RESIDENTIAL SEARCH WARRANT

On February 1, 2017, ATF Special Agent Justin Holbert prepared an application and affidavit in support of a search warrant for Defendant's residence located at 1408 Knottingham Road in Little Elm, Texas [Dkt. 129, Ex. 2]. The Knottingham Affidavit contains similar information as is contained in the Big Cedar Affidavit [Dkt. 129, Ex. 2 at 2]. In addition to the information provided in the Big Cedar Affidavit, the Knottingham Affidavit details more conversations with confidential informants, the search of the Big Cedar residence, and the items seized from the search of the Big Cedar residence [Dkt. 129, Ex. 2]. Agent Holbert specifically attested that in 2014, he spoke to two different confidential informants that both stated Defendant had supplied them with substantial quantities of methamphetamine and cocaine. One of these confidential informants stated that Defendant kept his narcotics at the Big Cedar residence and his money at the Knottingham residence. In 2016, Agent Holbert spoke with another confidential informant who detailed his history of dealing methamphetamine and cocaine with Defendant. Agent Holbert also received pictures and video taken from Defendant's Snapchat account that depicted large sums of cash, jewelry, narcotics, and a firearm [Dkt. 129, Ex. 2 at 5–6]. Specific to the Knottingham residence, Agent Holbert attested that within the weeks preceding his affidavit, Sherman Police Department had received an unsolicited statement that Defendant kept large amounts of cash resulting from his sale of narcotics at the Knottingham residence. Additionally, "within [] several weeks" preceding the Knottingham Affidavit, officers observed a vehicle registered to Defendant parked in the Knottingham residence's driveway and Defendant coming and going from the residence [Dkt. 129, Ex. 2 at 8]. Agent Holbert also noted that the Knottingham

residence is listed as Defendant's address on his driver's license and Defendant gave the Knottingham residence as his address to officers on January 30, 2017 [Dkt. 129, Ex. 2 at 8].

The undersigned issued the Knottingham Search Warrant on February 1, 2017. Agent Holbert and other officers executed the search warrant on February 1, 2017. Agent Holbert provided a return as follows: nine (9) photographs, two (2) credit cards in Defendant's name, one (1) document in Michelle Parker and Defendant's names, and one (1) document depicting drug transaction notes [Dkt. 129, Ex. 2 at 16]. Defendant seeks to suppress each of these items.

## VII. THE SNAPCHAT AND iPHONE SEARCH WARRANTS[4]

On April 6, 2017, Agent Holbert prepared an application and affidavit in support of a search warrant for Defendant's Snapchat account [Dkt. 129, Ex. 3]. The Snapchat Affidavit describes Agent Holbert's credentials, provides insight into the background of Snapchat and defined various terms specific to the use of Snapchat, and outlines the background investigation of Defendant's drug trafficking activity in Grayson County [Dkt. 129, Ex. 3]. Magistrate Judge Kimberly Priest Johnson issued the Snapchat Search Warrant on April 6, 2017. Agent Holbert provided a return as follows: "digital copy of records and information associated with Sherman_boy as stored at premises owned, maintained, and/or operated by Snapchat, Inc." [Dkt. 129, Ex. 3 at 15].

On April 18, 2017, Agent Holbert prepared an application and affidavit in support of a search warrant for Defendant's iPhone [Dkt. 129, Ex. 4]. The iPhone Affidavit similarly describes Agent Holbert's credentials, identifies the iPhone to be examined, and outlines the background investigation of Defendant's drug trafficking activity in Grayson County [Dkt. 129, Ex. 4]. The

---

[4] At Hearing, Defendant's argument to the Court in closing referenced only the Big Cedar and Knottingham Search Warrants [Dkt. 130 at 47]. It is unclear whether Defendant still pursues his briefing as to the Snapchat and iPhone Search Warrants. To the extent that Defendant does still seek suppression related to such warrants, the Court considers them herein.

undersigned issued the iPhone Search Warrant on April 18, 2017. Agent Holbert provided a return as follows: "digital copy of data contained on device" [Dkt. 129, Ex. 4 at 18].

**ANALYSIS**

Defendant moves to suppress "all the evidence obtained against him." To reiterate, Defendant argues in his briefing that the Big Cedar Affidavit is a "barebones affidavit that contains stale information from 2012 and conclusory statements from 2016, and began a chain of bad search-warrants" [Dkt. 120 at 19]. Defendant further argues that Sergeant Kumler should have included information about the protective sweep at the Big Cedar residence in the Big Cedar Affidavit so that Judge Fallon could have considered that no contraband was in plain view [Dkt. 120 at 27]. Defendant also asserts that "under the 'fruit-of-the-poisonous-tree' doctrine, all evidence derived from Big Cedar Search Warrant must be suppressed," including the Knottingham, Snapchat, and iPhone warrants, as well as Defendant's verbal statements [Dkt. 120 at 28].

## I. THE FOURTH AMENDMENT FRAMEWORK AND THE SUPPRESSION REMEDY

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The exclusionary rule, which permits criminal defendants to seek exclusion (suppression) of evidence obtained through "illegal search and seizure[,]" provides one vehicle through which citizens may "effectuate [this] Fourth Amendment right . . . ." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (noting that this rule "applies as well to the fruits of the illegally seized evidence"). The U.S. Supreme Court has characterized exclusion through suppression for decades as an "extreme sanction" that courts should apply only sparingly. *United States v. Leon*, 468 U.S. 897, 926 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009) (warning that application

of the exclusionary rule exacts "substantial social costs") (citations and internal quotations omitted); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse.").  Further, "[a] defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).  Here, the Parties concur that the burden rests squarely on Defendant [Dkt. 130 at 5].

A court must engage in a two-part inquiry in deciding whether to suppress evidence: it generally must ask first whether the good faith exception applies (and, in turn, whether any of the exceptions to that rule applies) and then, whether probable cause supports the warrant in question. *Leon*, 468 U.S. at 924.  Indeed, courts generally consider whether probable cause supports the warrant only in the absence of good faith.  *See Stalnaker*, 571 F.3d at 436; *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter.").

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *Leon*, 468 U.S. 897).  Normally, the issuance of a warrant by a magistrate suffices to establish an officer's good faith. *United States v. Pena-Rodriquez*, 110 F.3d 1120, 1130 (5th Cir. 1997).  But good faith cannot be established if one of the following four circumstances is present:

> (1) [i]f the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Payne*, 341 F.3d at 399–400 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n. 4 (5th Cir. 1992)) (hereinafter referred to as the "*Leon* exceptions"). In considering whether the good-faith exception applies, the Court does not attempt to determine the officers' subjective belief regarding the validity of the warrant. *See Leon*, 468 U.S. at 922 n. 23. Relevant herein, where a warrant is supported by more than a bare bones affidavit, an officer may rely in good faith on the warrant's validity. *United States v. Hall*, No. 1:13-CR-112(1), 2014 WL 12646032, at *3 (E.D. Tex. May 1, 2014), *report and recommendation adopted,* No. 1:13-CR-112(1), 2014 WL 12647763 (E.D. Tex. June 3, 2014), *aff'd,* 654 F. App'x 653 (5th Cir. 2016).

## II.    THE BIG CEDAR AFFIDAVIT DOES NOT CONTAIN STALE INFORMATION

Defendant contends that the Big Cedar Affidavit is so facially deficient that the good faith exception does not apply in this case because: (1) "the 2012 information is stale since the [Big Cedar Affidavit] contains a description of alleged criminal activity that was last alleged on November 15, 2012, and ended that same day … and then leaps to November 18, 2016 (four years and 3 days after the last activity date of November 15, 2012)" [Dkt. 120 at 20-21]; and (2) the Big Cedar Affidavit fails to provide information demonstrating "any kind of long-standing, ongoing pattern of criminal activity" or that the type of evidence sought (i.e., drugs, cash) is the sort that can reasonably be expected to be kept for long periods of time in the place to be searched [Dkt. 120 at 22].

"When evidence secured by a state official is used against a defendant accused of a federal offense, the pertinent question is whether the state official violated the Fourth Amendment in securing the evidence." *United States v. Hernandez-Acuna*, 202 F. App'x 736, 744 (5th Cir. 2006).

"To determine whether 'stale' information in an affidavit makes a search fall outside the good faith exception, [the Fifth Circuit] has said that the proper inquiry is whether the staleness caused the warrant to be 'so deficient that no reasonable officer could have believed that it established probable cause.'" *United States v. Torres*, 346 F. App'x 983, 990 (5th Cir. 2009) (quoting *United States v. Craig,* 861 F.2d 818, 821 (5th Cir. 1988)). "Staleness is to be determined on the facts of each case." *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984) *cert. denied,* 469 U.S. 1073 (1984) (citing *United States v. Freeman,* 685 F.2d 942 (5th Cir. 1982)); *see also Kelly v. State*, 529 S.W.3d 504, 509 (Tex. App.—Texarkana 2017, no pet.) ("The likelihood that the evidence sought is still available and in the same place is a function, not just of the watch or the calendar, but of the particular variables in the case.") (quoting *Crider v. State*, 352 S.W.3d 704, 707–08 (Tex. Crim. App. 2011)); *Aguirre v. State*, 490 S.W.3d 102, 115 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("the amount of delay that will make information stale for search-warrant purposes depends on the particular facts of the case, including the nature of the criminal activity and the type of evidence sought.") (citing *Lockett v. State,* 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). "No mechanical counting of the time between the events alleged in the affidavit and the time the warrant is issued will be made." *Id.*; *see also Lockett v. State,* 879 S.W.2d at 189 ("Mechanical count of days is of little assistance in this determination" but rather common sense and reasonableness must prevail, with considerable deference given to the magistrate based on the facts before him, absent arbitrariness.) (quoting *Ellis v. State,* 722 S.W.2d 192, 196–97 (Tex. App.—Dallas 1986, no pet.)). "With regard to staleness, time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence." *Rivas v. State*, 446 S.W.3d 575, 579 (Tex. App.—Fort Worth 2014, reh'g overruled).

The Fifth Circuit has noted that "[t]wo considerations have consistently appeared in [the Fifth Circuit's] opinions on the issue of staleness:"

> First, if "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale." Second, the nature of the evidence sought is also relevant. Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched.

*Craig*, 861 F.2d at 822–23 (quoting *Webster*, 734 F.2d at 1056); *see also Aguirre*, 490 S.W.3d at 115 ("when the affidavit properly recites facts indicating activity of a protracted and continuous nature—a course of conduct—the passage of time becomes less significant.") (quoting *Lockett*, 879 S.W.2d at 189).

In the instant case, the information in the Big Cedar Affidavit is not stale, but instead, is indicative of an "ongoing pattern of criminal activity." *United States v. Alvarez*, 561 F. App'x 375, 388 (5th Cir. 2014) (defendant was implicated in a long-standing, ongoing pattern of criminal activity in affidavit that focused on defendant's single instance of involvement two years prior to the application for the search warrant); *United States v. Chapa-Ibarra*, 49 F.3d 727 (5th Cir. 1995) ("Although [the defendant] withdrew from the conspiracy in January 1992, he had been a part of it for a number of years. Because [the defendant's] ongoing participation covered several years, the lapse of time between January 1992 and [the issuance of the search warrant in June 1993] does not render stale the information contained in the affidavits. We conclude that the district court properly applied the good-faith exception and denied [the] motion to suppress."); *Webster*, 960 F.2d at 1306 (the Fifth Circuit rejected a defendant's argument that the warrant was based on stale information because the affidavit "described a number of arrests, police surveillance, and informants' observations regarding [the defendant] between 1984 and 1990," and therefore,

demonstrated the defendant's involvement in a long-standing, ongoing pattern of criminal activity); *United States v. Gayle*, No. 08 CR 1244, 2009 WL 4667093, at *3–4 (S.D.N.Y. Dec. 8, 2009) ("The continuous nature of the narcotics conspiracy charged in the Indictment and the facts set forth in the Warrant Affidavit establish that the February 2009 search was not impaired by staleness. The Warrant Affidavit described a narcotics conspiracy, of which [the defendant] was a critical member, that began in 2003 and continued through 2008."); *Jones v. State*, 338 S.W.3d 725, 738 (Tex. App.—Houston [1st Dist.] 2011), *aff'd,* 364 S.W.3d 854 (Tex. Crim. App. 2012) (affidavit was not stale, but  instead, "the affidavit adequately suggested a continuing criminal operation, including 'recently' obtained information from the first confidential informant [concerning the sale of narcotics at residence], from the affiant's own investigation, and from the second confidential informant who made the controlled buy."); *Kelley v. State*, No. 10-16-00232-CR, 2017 WL 2623062, at *5 (Tex. App.—Waco June 14, 2017, no pet.) ("the search-warrant affidavit [supported] conclusion that illegal 'activity of a protracted and continuous nature' was ongoing at [the defendant's] residence .… [because] the affidavit mentioned the controlled buy, as well as previous complaints to the Bryan Police Department regarding marihuana smells emanating from the residence and increased traffic at the residence. Furthermore, the affidavit notes that [the defendant] was known to be involved in the distribution of crack cocaine from her residence.").

In the Big Cedar Affidavit, Sergeant Kumler attested that as early as 2012 and up until Defendant's arrest on January 30, 2017, he and other law enforcement had investigated Defendant's drug trafficking activities in the Grayson County area.  The Big Cedar Affidavit's information was based on numerous sources of information, including conversations with reliable confidential informants and confidential sources, various traffic stops and searches involving

Defendant, and surveillance conducted by law enforcement. Sergeant Kumler attested that "[o]ver the past several years, [he] has received information from Confidential Sources and Confidential Informants that [Defendant] and [Michelle Parker] are involved in the distribution of Cocaine, Methamphetamine, and Marijuana in Denison, Grayson county, Texas area" [Dkt. 129, Ex. 1 at 2]. Additionally, Sergeant Kumler attested that he "has received information from Confidential Sources that [Defendant] keeps a quantity of Cocaine, Methamphetamine, and Marijuana at [the Big Cedar residence]" [Dkt. 129, Ex. 1 at 2]. The Big Cedar Affidavit then detailed specific examples of Defendant's conduct in 2012 wherein: law enforcement found large sums of cash on Defendant's person or in his vehicle multiple times; Defendant was observed entering into residences noted for their drug activity for short periods of time (indicative of drug transactions); and numerous confidential informants noted their observations of Defendant with large amounts of narcotics and Defendant's known reputation of supplying narcotics to Grayson County. Notably, the Big Cedar Affidavit then also presents more recent events, some that had occurred immediately before Sergeant Kumler applied for the Big Cedar Search Warrant: specifically, Defendant's arrest in the driveway of the residence where Defendant was alleged to be keeping narcotics, the large sum of cash found on his person at the time of his arrest (consistent with the events detailed in 2012), and also Sergeant Kumler's "detect[ion] [of] a strong smell of marijuana emitting from the residence" [Dkt. 129, Ex. 1 at 5–6]. The Big Cedar Affidavit contains a number of events, conversations, and observations that demonstrate that Defendant was involved in an ongoing pattern of criminal activity. The information contained in the Big Cedar Affidavit was not stale.

**III.     THE BIG CEDAR AFFIDAVIT IS NOT A BARE BONES AFFIDAVIT.**

Furthermore, even if the Court excised the 2012 information from the Big Cedar Affidavit as Defendant argues the Court should, the Big Cedar Affidavit would not constitute a bare bones affidavit. "A 'bare bones' affidavit is defined as one that contains 'wholly conclusory statements, [lacking] the facts and circumstances from which a magistrate can independently determine probable cause.'" *Hall*, 2014 WL 12646032, at *3 (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)); *see also United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) ("[E]xamples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises.") (alterations in original)(citations omitted). "Whether an affidavit is 'bare bones' is determined under 'the totality of the circumstances, including the veracity, reliability, and basis of knowledge of a confidential informant.'" *Id.* (quoting *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)). "The issuing judge must be allowed to draw reasonable inferences from the affidavit, and the ultimate determination of the affidavit's adequacy is entitled to great deference on review." *Id.* (quoting *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987)).

Defendant argues that the allegations stated in the Big Cedar Affidavit from November 2016 and January 2017 are conclusory and/or otherwise insufficient to support probable cause. In November 2016, Defendant allegedly was involved in a car wreck where a vehicle, containing three bags of cocaine and mail addressed to Defendant's wife, attempted to evade police, and was believed to be in possession of large sums of cash. On January 30, 2017, Defendant was arrested with a large sum of cash in the driveway of the Big Cedar residence (believed to be a stash house based on information from confidential sources), and Sergeant Kumler, standing on

the front porch of the Big Cedar residence, smelled a strong odor of marijuana coming from inside. Defendant avers that when only considering the events from November 2016 and/or January 2017, it is impossible to find probable cause exists that Defendant was selling and storing cocaine, methamphetamine, and marijuana at the Big Cedar residence as part of a drug trafficking enterprise.

Specifically, Defendant focuses on January 30, 2017, arguing that the smell of marijuana alone was not sufficient to establish probable cause to issue a search warrant for the Big Cedar residence under *State v. Steelman*, 93 S.W.3d 102, 103–04 (Tex. Crim. App. 2002). In *Steelman*, the state appellate court found the odor of burnt marijuana coming from inside a residence, did not authorize a warrantless search and seizure in a residence, but did not find, as Defendant seemingly suggests, that the odor of marijuana was not sufficient probable cause to issue a search warrant. *Id*.; *see also Effler v. State*, 115 S.W.3d 696, 699 (Tex. App.—Texarkana 2003, reh'g overruled) (smell of odor officer associated with manufacture of methamphetamine, in conjunction with officer's knowledge and experience; sound of people running inside house; and one person's opening door then quickly running away amounted to probable cause to search). Moreover, federal courts considering this issue have found that "[d]istinctive odors, detected by those qualified to know them, may alone establish probable cause to obtain a [search] warrant." *United States v. Walters*, 529 F. Supp. 2d 628, 642 (E.D. Tex. 2007) ("The strong odor of methamphetamine (corroborating the tip Officer Cooke received less than 20 minutes earlier) was sufficient not only to generate a reasonable suspicion of criminal activity, but also probable cause to believe that evidence of criminal activity was located on the premises.") (citing *United States v. McKeever,* 906 F.2d 129, 132 (5th Cir. 1990); *Johnson v. United States,* 333 U.S. 10, 13 (1948)).

Turning back to the Big Cedar Affidavit, when considering whether an affidavit presented is sufficient, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Gates,* 462 U.S. at 238–39. "[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (internal quotations omitted). "The magistrate's determination is entitled to deference in marginal cases." *United States v. Thomas*, 7 F. Supp. 2d 836, 842 (W.D. Tex. 1997) (quoting *United States v. Fooladi,* 703 F.2d 180, 184 (5th Cir. 1983), *cert. denied,* 470 U.S. 1006 (1985)). "[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Alberty*, No. 3:14-CR-7-L, 2014 WL 2159259, at *5 (N.D. Tex. May 23, 2014) (quoting *Sokolow,* 490 U.S. at 8; *Gates,* 462 U.S. at 238). "Probable cause exists when 'the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been (or is being) committed.'" *Id.* (quoting *United States v. Petty*, 601 F.2d 883, 890 (5th Cir. 1979)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates,* 462 U.S. at 244 n. 13. "Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. It is a flexible, non-demanding standard." *State v. Cuong Phu Le*, 463 S.W.3d 872, 878 (Tex. Crim. App. 2015), *reh'g denied* (July 29, 2015), *cert. denied,* 136 S.Ct. 819 (2016) (citing *State v. McLain,* 337 S.W.3d 268, 272 (Tex. Crim. App. 2011)). "Probable cause is a 'fluid concept' that depends on the specific factual context of any given case." *Thomas*, 7 F. Supp. 2d at 842 (citing *Gates,* 462 U.S. at 232).

The Big Cedar Affidavit contains information in addition to Sergeant Kumler's detection of a strong smell of marijuana coming from inside the Big Cedar residence. The Big Cedar Affidavit generally notes that confidential sources provided information that the Big Cedar residence was used as a place where Defendant, a reputed drug supplier, kept quantities of cocaine, methamphetamine, and marijuana. Additionally, several weeks prior, Defendant allegedly fled an accident scene where the wrecked vehicle was registered to his wife at the Big Cedar residence's address, and items of mail addressed to the Big Cedar residence along with three bags of cocaine were found in the vehicle. The Big Cedar Affidavit also notes that Defendant was arrested and "found to be in possession of $7,083.00 in U.S. currency" in the driveway of the Big Cedar residence, while his wife (also a reputed narcotics supplier), stood on the front porch of the Big Cedar residence [Dkt. 129, Ex. 1 at 5–6]. The Big Cedar Affidavit does not constitute a bare bones affidavit.

## IV.    EXCLUSION OF THE PROTECTIVE SWEEP FROM THE BIG CEDAR AFFIDAVIT

Finally, Defendant argues that Sergeant Kumler precluded Judge Fallon, the issuing state court judge, from properly determining the existence of probable cause by withholding information that he and other officers had conducted a protective sweep of the Big Cedar residence which did not yield any contraband in plain view, and therefore, the good faith exception does not apply in this case.[5] "Officers may rely on the totality of the facts when establishing probable cause, but may

---

[5] It does not appear that either party intends to and/or has asserted a *Franks* issue; certainly, the briefing does not cite to *Franks*, and *Franks* was not argued at Hearing. However, in an abundance of caution, to the extent Defendant seeks, by and through his argument that information was omitted from the Big Cedar Affidavit, to assert a *Franks* issue, he has not carried his burden.  "The good faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." *United States v. Hall*, No. 1:13-CR-112(1), 2014 WL 12646032, at *4 (E.D. Tex. May 1, 2014), *report and recommendation adopted,* No. 1:13-CR-112(1), 2014 WL 12647763 (E.D. Tex. June 3, 2014), *aff'd,* 654 F. App'x 653 (5th Cir. 2016) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  "The initial burden is on the defendant to prove that the false information was given intentionally or recklessly.  *Id.* (citing *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir.), *cert. denied*, 537 U.S. 910 (2002)).  If probable cause still exists after information omitted from an affidavit supporting a residential search warrant is hypothetically included, then such information is not material; therefore, its omission

not disregard facts tending to dissipate probable cause." *United States v. Mangum*, No. 4:09-CR-189, 2010 WL 1856453, at *5, n. 2 (E.D. Tex. Apr. 15, 2010), *report and recommendation adopted,* No. 4:09-CR-189, 2010 WL 1849260 (E.D. Tex. May 5, 2010) (citing *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir. 1988)). "When an officer omits potentially exculpatory evidence, such as a search the officer believed would reveal criminal activity that in fact revealed none, he prevents the magistrate from weighing the totality of the circumstances when making a probable cause determination for a search warrant." *Id*.

Sergeant Kumler testified that he included all the information he believed to be relevant and material in the Big Cedar Affidavit [Dkt 130 at 24]. At Hearing, he testified regarding his belief that his omission from the Big Cedar Affidavit that he and officers had conducted a protective sweep of the Big Cedar residence and did not find any contraband in plain view was immaterial to applying for a search warrant for the residence [Dkt. 130 at 24]. The Court agrees that such information was immaterial to the issuance of the Big Cedar Search Warrant. The fact that marijuana was not found during the protective sweep does not negate or undermine the substantial amount of information supporting probable cause that criminal activity was occurring at the Big Cedar residence. *United States v. Smith*, 108 F. App'x 402, 404–05 (7th Cir. 2004) ("Nevertheless, whether or not the initial entry is defensible, suppression is warranted only where police seize evidence illegally. Here, even assuming the illegality of the initial entry and thus the 'protective sweep' that followed, it is undisputed that police discovered none of the evidence Smith seeks to suppress, during the 'protective sweep.' Rather, police seized every piece of evidence Smith sought to suppress only after they obtained a warrant. Moreover, even if the police had seen

---

does not violate the Fourth Amendment. *See Strickland v. City of Crenshaw, Miss.,* 114 F. Supp. 3d 400, 408 (N.D. Miss. 2015). Defendant has not carried his initial burden. The inclusion of the protective sweep does not negate probable cause.

some contraband during the initial entry, suppression would not follow unless the information relied on in seeking the warrant was tainted by the initial entry …. Because the warrant was obtained independently of the alleged illegality, the district court did not err in denying Smith's suppression motion.") (internal citations omitted) (citing *Murray v. United States,* 487 U.S. 533, 536 (1988); *Calandra,* 414 U.S. at 348).

## V.   FRUIT OF THE POISONOUS TREE

Defendant further argues that "under the 'fruit-of-the-poisonous-tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure (the [Big Cedar Search Warrant and Affidavit]) must be suppressed" [Dkt. 120 at 28].   "Evidence derived from an unreasonable search or seizure generally must be suppressed under the 'fruit-of-the-poisonous-tree doctrine." *United States v. Walsh*, No. 2:17-CR-023-D, 2017 WL 3702018, at *3 (N.D. Tex. Aug. 28, 2017) (quoting *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015); *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013)).   Because the Court does not find that an unreasonable search or seizure occurred in this case, it is unpersuaded by Defendant's argument that all evidence derived from the Big Cedar Search Warrant should be suppressed.[6]

---

[6] Defendant also asserts that the attenuation doctrine, "independent source" exception, "inevitable discovery" exception, and "exigent-circumstances" do not apply [Dkt. 120 at 27-29].   The Supreme Court has stated: "[s]uppression of evidence ... has always been our last resort, not our first impulse.   We have accordingly recognized several exceptions to the rule. Three of these exceptions involve the causal relationship between the unconstitutional act and the discovery of evidence:"

> First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. Third, … is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."

*Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016).   Because the Court has already concluded that this evidence should not be suppressed, it does not reach Defendant's arguments that these exceptions do not apply to this case.

## A.    THE KNOTTINGHAM AFFIDAVIT

Because the Court finds that the Big Cedar Affidavit is not a bare bones affidavit unsupported by probable cause, the Court similarly finds that the Knottingham Affidavit, which contains further indicia of probable cause, is also not a bare bones affidavit. Insofar as Defendant challenges the Knottingham Affidavit as insufficient, the undersigned finds this argument is unsupported by the record and above analysis.

## B.    THE SNAPCHAT AND IPHONE SEARCH WARRANTS

Moreover, Defendant argues that the Snapchat and iPhone Search Warrants "merely parrot the information in the [Big Cedar Affidavit]," and therefore, the evidence derived from these search warrants should be suppressed. The Snapchat Affidavit contained similar information (as is contained in the Big Cedar and Knottingham Affidavits) regarding the investigation's information from confidential sources and confidential informants that Defendant and Michelle Parker were involved in the distribution of cocaine, methamphetamine, and marijuana in Grayson County [Dkt. 129, Ex. 3]. Moreover, notably, in addition to the information provided in the Big Cedar and Knottingham Affidavits, the Snapchat Affidavit detailed Defendant's use of his Snapchat account and various images and videos from Defendant's Snapchat account that were provided by confidential informants [Dkt. 120-1 at 26]. Agent Holbert attested that he knew from Confidential Sources that "[Defendant] used Snapchat under the username 'Sherman_boy' to communicate with persons regarding his illegal dealing of narcotics as well as his illegal possession of firearms" [Dkt. 129, Ex. 3 at 6]. Specifically, the Snapchat Affidavit listed photographs from Defendant's Snapchat account of "large sums of U.S. currency, jewelry, narcotics and a firearm," as well as a video that depicted a large amount of marijuana and another video that "contained [Defendant] holding a firearm and saying 'when I go to sleep, I gotta put

this beside me man, there's a lot of haters in the world but this is what they gonna get'"
[Dkt. 129, Ex. 3 at 6–7].

The iPhone Affidavit also included additional unique information. In addition to the information provided in the other Affidavits, the iPhone Affidavit details information Agent Holbert gathered from Defendant's numerous phone calls from within the Fannin County Jail, wherein Defendant "relayed his desire to keep cellular devices formerly in his possession hidden from law enforcement" [Dkt. 129, Ex. 4 at 9]. Agent Holbert also reiterated the information gathered from Defendant's Snapchat photographs and videos, and stated that he "knows that Snapchat is a mobile phone application and is accessed thru [sic] the use of cellular devices" [Dkt. 129, Ex. 3 at 8].

C.    DEFENDANT'S VERBAL STATEMENTS

Defendant also argues that "'[v]erbal evidence, as well as physical evidence may be the tainted fruit of an unlawful search and therefore must be suppressed, so any statement that Defendant may have made while incarcerated must be suppressed" [Dkt. 120 at 28]. Because the Court has not found that there was any unreasonable search or seizure to taint such evidence, there is nothing warranting suppression of Defendant's verbal statements while in custody.

CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends Defendant Dameon Deon Parker's Motion to Suppress Evidence [Dkt. 120] be **DENIED**.

As the Parties agreed at Hearing, within five days after entry of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge; responses to such objections must be filed within three days after the filing of such objections [Dkt. 130 at 5]. In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 21st day of December, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE